NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

In re the Matter of:

CHRISTOPHER P. HANSON, *Petitioner/Appellant*,

*v.*

REBECCA BINDL, *Respondent/Appellee*.

No. 1 CA-CV 19-0261 FC
FILED 4-14-2020

Appeal from the Superior Court in Maricopa County
No. FC2016-050647
The Honorable Adam D. Driggs, Judge

**AFFIRMED**

COUNSEL

Law Office of S. Alan Cook, P.C., Phoenix
By S. Alan Cook
*Counsel for Petitioner/Appellant*

Katz & Bloom, P.L.C., Phoenix
By Norman M. Katz
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Kenton D. Jones joined.

---

**W I L L I A M S**, Judge:

¶1          Christopher P. Hanson ("Father") appeals the superior court's order requiring him to pay Rebecca Bindl ("Mother") child support for their two children. Father also appeals the superior court's denial of a motion for new trial and an award of attorneys' fees. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2          Mother and Father lived together for more than ten years, but never married, and have two minor children in common. During the relationship Father was the sole income earner for the household.

¶3          Father is a licensed real estate broker and agent who has been self-employed for more than thirty years, and has approximately seventy real estate agents working for his brokerage firm, ten of whom are full-time agents. Father receives a portion of each agent's commission from real estate transactions in which they are involved. In addition, Father previously purchased and sold properties; a process commonly referred to as "flipping" houses.

¶4          Throughout the ten-year relationship, Mother and Father's basic living expenses averaged more than $5,000 per month. In addition, Father gave Mother an additional $500 to $1,000 each month to spend at her discretion. The parties enjoyed an "affluent" lifestyle of vacationing in Hawaii an average of one to two times each year, as well as to other destinations, ate out often at nice restaurants, and owned valuable assets including a nice home, high-performance vehicles and a large boat.

¶5          After Mother and Father separated in April 2016, they shared equal parenting time with the children. Mother obtained full-time employment earning $20.55 per hour. Since then, Mother has provided health insurance for the children. Although each parent has paid for the children's needs while in their care, neither parent has paid the other any amount for the support of the children since the separation.

¶6          During the pendency of the case, Mother made discovery requests of Father for Father's bank records and business expenses. Mother alleged Father's disclosure was incomplete, which Father disputed. The parties eventually stipulated to hire a federally authorized tax practitioner to review Father's business records and determine Father's income for child support purposes. The stipulation resulted in a court order directing each party to cover a portion of the associated cost. Mother gave her share of the cost to her attorney, which was placed in her attorney's IOLTA account. Father never paid his portion, which was discharged in Father's bankruptcy prior to trial. Consequently, the court ordered evaluation by the tax practitioner never took place.

¶7          Prior to trial, the parties entered into an agreement to share joint legal decision-making authority for the children and to exercise equal parenting time. Only the issue of child support remained in dispute. Following trial, the court found Mother's income to be $20.55 per hour and credited Mother for monthly health insurance costs paid for the children. The court determined Father's earning capacity to be $6,500 per month and attributed that amount as his gross monthly income. The court ordered Father to pay Mother child support in the amount of $321.56 per month retroactive to July 1, 2016. Additionally, the court further ordered Father to pay $100.00 per month towards the child support arrearages owed.

¶8          Father contends the superior court erred in determining each party's gross income, in awarding Mother a portion of her attorneys' fees and costs, and abused its discretion in denying a motion for new trial. Father timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

*I.      Child Support*

¶9          "We review *de novo* the trial court's interpretation of the [Child Support] Guidelines," but review child support awards for an abuse of discretion and accept the trial court's findings of fact unless clearly erroneous. *Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009).

¶10          In determining a child support award, the superior court considers the parents' gross income, which includes income from any source. A.R.S. § 25-320 app. § 5(A) (2018) ("Guidelines"). "[G]ross income for child support purposes is not determined by the gross income shown on the parties' income tax returns, but rather on the actual money or cash-

like benefits received by the household which is available for expenditures." *Cummings v. Cummings*, 182 Ariz. 383, 385 (App. 1994).

¶11 Where a parent is "working below full earning capacity" the court has the discretion to attribute income to that parent "up to his or her earning capacity." Guidelines § (5)(E). Thus, the Guidelines allow the court to attribute hypothetical income when one parent has "chosen not to earn income to the extent he or she is able." *Engel*, 221 Ariz. at 511, ¶ 22; *see also* Guidelines § (5)(E) (allowing the court to attribute income up to the amount of parent's earning capacity when parent has reduced his or her earnings "as a matter of choice and not for reasonable cause.").

¶12 Father contends the superior court erred by failing to include within Mother's gross income those contributions her employer made toward Mother's health and dental insurance premiums each month, as well as her employer's contributions toward Mother's health savings account. While it is true that "benefits received by a parent in the course of employment . . . [which] reduce personal living expenses" are counted as income, Guidelines § (5)(D), the record is devoid of any evidence that these benefits somehow reduced Mother's personal living expenses, or that she would have received an increased salary in lieu of the benefits had she opted out of the same. *See Hetherington v. Hetherington*, 220 Ariz. 16, 23, ¶ 28 (App. 2008). Consequently, the court determined Mother's gross monthly income was limited to her hourly wage. This finding is supported by the record, consistent with the Child Support Guidelines, and within the court's discretion.

¶13 Father further contends the superior court erred in determining his gross income. Although Father concedes some income may be attributed to him for child support calculation purposes, he contends the superior court erred by attributing his monthly income to be greater than the $2,500 he claimed it was. As to this issue, the court found:

> Father's claimed income, whether actual or not, is well below Father's full earning capacity. Father did not provide sufficient evidence to the Court to support his claim that he is making reasonable attempts to reach his full earning potential. Additionally, while Father did provide some evidence that he is currently earning well below his traditional earning capacity, he did not provide evidence to suggest his reduced earnings were not voluntary. As a result, the Court will attribute income of $6,500 per month to Father. This amount is less than Mother requested, but is a figure the

4

> Court confidently feels an individual with Father's experience
> and skills could reasonably earn with reasonable effort.

¶14        Even though the superior court was uncertain exactly what Father's income was, a review of the record does not lead us to conclude the court committed clear error in assigning $6,500 to reflect Father's monthly earning capacity. Mother estimated Father's income to be "[a]t least $100,000" annually, which she asserted would have been necessary to cover the lifestyle they lived.[1] In addition, there were business records and testimony that supported gross receipts earned by Father's businesses being significantly higher leading up to Mother and Father's separation than immediately following the separation, thus leading the court to conclude that Father voluntarily lowered his income. For these reasons, we see no abuse of discretion in the court's finding that $6,500 monthly was reflective of Father's "full earning capacity."

¶15        The superior court then acknowledged the difficulty in determining exactly what Father's income was, stating that "[h]ad Father adhered to the Court's orders regarding the appointment of a Federally Authorized Tax Practitioner to determine Father's income, the Court would be in a better position to more accurately determine his income."

¶16        Father contends the superior court penalized him for failing to pay a financial obligation that was discharged in connection with his bankruptcy. We disagree. The superior court simply acknowledged the difficulty it had in determining exactly what Father's income was. Father then claims the superior court violated Father's constitutional rights citing to Article I, Section 8, Clause 4; Article II, Sections 3, 4, 13, and 32; and the 14th Amendment. Although Father cites to these constitutional provisions, he has failed to demonstrate how or where a violation of these provisions occurred in the matter at hand. Father's argument is without merit.

¶17        Because the superior court correctly interpreted the Child Support Guidelines and we determine there to be no clear error or abuse of

---

[1] Mother was asked on direct examination by her attorney, "[W]hat would you average [Father's] monthly income to have to be to cover those expenses?" To which she answered, "At least $100,000." Although the question focused on "monthly income," it appears the superior court understood Mother to mean at least $100,000 was earned annually by Father. Mother used the $100,000 annual figure for Father's income on her proposed child support worksheet.

discretion in the court's factual findings, we will not disturb the court's child support order.

## II. Compliance with the Rules of Evidence

¶18 Arizona Rule of Family Law Procedure 2(a) provides that, "[a]ny party may file a notice to require compliance with the Arizona Rules of Evidence at a hearing or trial." Mother timely filed a Rule 2(a) notice thereby requiring strict compliance with the Rules of Evidence at trial.

¶19 Unless precluded by a rule, statute, or the United States or Arizona Constitution, "relevant evidence is admissible." Ariz. R. Evid. 402. "Relevant evidence" is evidence "ha[ving] any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." Ariz. R. Evid. 401. Father contends the superior court erred by allowing Mother's counsel to ask leading questions on direct examination, allowing Mother to respond to questions that lacked foundation, and by allowing testimony on matters Father believes were not relevant to the proceeding.

¶20 We review the superior court's determination as to the admissibility and relevance of evidence for an abuse of discretion. *State v. Fillmore*, 187 Ariz. 174, 179 (App. 1996). "In determining the relevancy and admissibility of evidence, the trial judge is invested with considerable discretion," which "will not be disturbed on appeal unless clearly abused." *State v. Hensley*, 142 Ariz. 598, 602 (1984).

¶21 Although Father identifies several instances within the record which he contends demonstrate the superior court's errors in allowing certain questions or answers, Father has failed to show how any of the instances rise to the level of an abuse of discretion. Further, it is clear from the record that, if leniency was afforded by the superior court to Mother and to Mother's counsel, that same leniency was also extended to Father's counsel in his line of questioning, and to Father in providing his answers.

## III. Mother's Award of Attorneys' Fees

¶22 We review a court's award of attorneys' fees under A.R.S. § 25-324 for an abuse of discretion. *Mangan v. Mangan*, 227 Ariz. 346, 352, ¶ 26 (App. 2011). Section 25-324(A) authorizes the court to award attorneys' fees after considering the parties' financial resources and the reasonableness of their positions. An award of attorneys' fees may be supported on either basis. A.R.S. § 25-324(A).

**¶23** Father contends the superior court abused its discretion in awarding Mother attorneys' fees because Mother requested attorneys' fees under A.R.S. § 25-324, rather than A.R.S. § 25-809(G). Although A.R.S. § 25-324 falls under chapter 3 (the dissolution of marriage chapter) it specifically provides that a request for fees can be brought for actions arising "under [that] chapter *or chapter 4, article 1*." (Emphasis added.) Chapter 4, article 1 of title 25 includes those statutes governing legal decision-making and parenting time. Although this action did not involve a dissolution of marriage, it did involve legal decision-making and parenting time. Thus, Father's argument fails.

*IV. Motion for New Trial or Amended Judgment*

**¶24** Finally, Father argues the superior court erred in denying his motion for new trial or amended judgment.

**¶25** The trial court has broad discretion in determining whether to grant or deny a motion for a new trial. *Pullen v. Pullen*, 223 Ariz. 293, 296, ¶ 10 (App. 2009). "[W]e will not overturn that decision absent a clear abuse of discretion." *Id.* (quoting *Delbridge v. Salt River Project Agric. Improvement & Power Dist.*, 182 Ariz. 46, 53 (App. 1994)). The burden to show the trial court abused its discretion in denying a motion for new trial is upon the party seeking to overturn the decision. *Id.*

**¶26** Father argues the superior court relied upon "inappropriate speculation" in determining its findings and rulings, rather than entering orders consistent with the evidence presented. He also argues the court was biased against men. Those arguments lack merit. For the reasons set forth above, the superior court did not abuse its discretion in making findings, nor do we discern any indication of judicial bias. Consequently, Father has failed to show the superior court abused its discretion in denying his motion for new trial or amended judgment.

**CONCLUSION**

**¶27** For the foregoing reasons, we affirm. Mother and Father have each requested an award of attorneys' fees and costs. After considering the parties' financial resources and the reasonableness of their positions, pursuant to A.R.S.§ 25-324 and in our discretion, we deny Father's request. Subject to compliance with Arizona Rule of Civil Appellate Procedure 21, we award taxable costs and reasonable attorneys' fees to Mother.



AMY M. WOOD • Clerk of the Court
FILED: AA